902 F.2d 208
 60 Ed. Law Rep. 379
 Marilyn A. STRONG, Plaintiff-Appellant,
v.
BOARD OF EDUCATION OF the UNIONDALE UNION FREE SCHOOL
DISTRICT, Alan G. Hernandez, Individually and as
Superintendent of the Uniondale Union
Free School District,
Defendants-Appellees.
 No. 1089, Docket 89-9038.
 United States Court of Appeals,
Second Circuit.
 Argued April 5, 1990.
Decided May 2, 1990.
 
 Mary E. Moriarty, New York City (James R. Sandner, New York City, of counsel), for plaintiff-appellant.
 Terence M. O'Neil, Mineola, N.Y. (Mark N. Reinharz, Rains & Pogrebin, Mineola, N.Y., of counsel), for defendants-appellees.
 Before KAUFMAN, FEINBERG and WALKER, Circuit Judges.
 IRVING R. KAUFMAN, Circuit Judge:
 
 
 1
 The primary issue presented is whether a local school board denied a tenured public school teacher due process by refusing to allow her to return from an extended medical absence before she provided medical records and submitted to a physical examination by the school board doctor. In affirming the grant of summary judgment below, we hold that procedural due process is satisfied when a teacher in such circumstances is provided notice and an opportunity to respond to the adverse action of the school board, and when the state also affords a mechanism for obtaining judicial review of the board's decision on a subsequent petition for reinstatement. In addition, we find no constitutional violation of appellant's interest in privacy.
 
 BACKGROUND
 
 2
 Appellant Marilyn Strong has been employed since 1980 by the Uniondale Union Free School District, in Nassau County, New York (School District). She has taught sixth grade at Northern Parkway Elementary School since 1981, and was awarded tenure in 1984.
 
 
 3
 From May 17, 1988 through the end of the academic year in late June, Strong was absent from the classroom because of illness. On June 8, after the School District inquired into the condition of its employee's health, it received a terse note from Strong's personal physician describing her as suffering from "severe nosebleed, vertigo, [and] arthritis."In addition, Strong signed an insurance form[1] and forwarded it to the School District in July, indicating she was currently "disabled" and that the date of her return to work was "unknown." Significantly, the form contained an "Authorization to Obtain Information" clause directly above Strong's signature which explicitly authorized any doctor who had treated her to release "any and all information" concerning her medical history to the insurance company.
 
 
 4
 During the ensuing summer months, the School District sought in vain to communicate with Strong. Registered letters to her home address went unclaimed; repeated efforts to reach her by telephone proved futile. Moreover, Strong's mother purportedly refused to provide the School District with her daughter's current address. Strong explains by alleging that she was under doctor's orders not to contact her employers because it made her ill to do so.
 
 
 5
 Unsuccessful in its efforts to contact Strong directly, the School District sent a letter dated August 17, 1988 to Strong's counsel, who had been retained pursuant to an unrelated discrimination claim against it. The letter directed Strong to produce an evaluation by her treating physician of her medical condition indicating whether she would be capable of resuming her teaching post. The communication specifically required Strong to provide "the names of all doctors she has seen since the commencement of her illness, along with releases permitting such doctors to provide the District with her medical records."
 
 
 6
 In response, Strong's lawyers stated that she would be returning to work at the start of the 1988-89 school year, but omitted any discussion of their client's health or medical records. Accordingly, on August 29 the School District asserted that Strong needed to provide "her medical records and history" to the School District's physician and be examined by him before returning to the classroom. Strong did not comply.
 
 
 7
 When Strong attempted to resume teaching on the first day of the new school year, September 6, 1988, School District Superintendent Alan Hernandez informed her (both orally and in subsequent letters summarizing their conversation) that she could not return until she submitted to a medical examination and produced her records. Strong indicated her willingness to be examined by the School District's doctor, but steadfastly refused to provide her medical records, except for a doctor's note stating that she has been treated "for chest pains, arthritis, palpitations, [and] headaches" and asserting her ability to return to teaching. The School District's doctor, however, maintained that he could not certify a teacher as fit to return from an extended illness without medical reports from that teacher's treating physician and that the conclusory assertions of Strong's personal physician fell far short of the information necessary to render an informed medical opinion.
 
 
 8
 On November 22, 1988, the Board of Education passed a resolution, pursuant to Section 913 of the Education Law,[2] instructing Strong to appear at the office of the School District's doctor for a physical examination. The resolution directed Strong to bring any and all medical records relating to her absence from school commencing May 16, 1988, to her examination so that the School District's physician could properly evaluate the status of her health. To date, Strong has neither submitted to an examination nor proffered her medical records. Since she has exhausted her accrued sick leave, Strong no longer receives a salary.
 
 
 9
 Strong initiated this suit in December 1988, alleging that the School District's actions violated her constitutional rights to privacy and due process and challenging the constitutionality of Education Law section 913. In March 1989 the School District moved to dismiss the complaint, in its entirety, for failure to state a claim. This motion was converted by the court below into a motion for summary judgment, Fed.R.Civ.P. 56, which the court granted.
 
 DISCUSSION
 I. Due Process
 
 10
 Strong urges that before the School District acted to bar her from the classroom she should have been notified of the "charges" against her, given an explanation of the School District's evidence, and provided an opportunity to present her side of the story.
 
 
 11
 Strong's procedural due process claim triggers analysis under a familiar framework. The threshold issue is whether Strong asserts a property interest protected by the Constitution. See Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); Narumanchi v. Board of Trustees of Connecticut State Univ., 850 F.2d 70, 72 (2d Cir.1988). If a protected interest exists, we must then determine whether the School District deprived Strong of that interest without due process. Narumanchi, 850 F.2d at 72. The constitutional contours of due process turn on the specific circumstances of the case, including the governmental and private interests at issue. Mathews v. Eldridge, 424 U.S. 319, 334-35, 96 S.Ct. 893, 902-03, 47 L.Ed.2d 18 (1976). Due process is a flexible concept requiring only such procedural protection as the particular situation demands. See Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972).
 
 
 12
 Strong's position as a tenured teacher is indisputably a property interest protected by the fourteenth amendment. Gargiul v. Tompkins, 704 F.2d 661, 668 (2d Cir.1983), vacated on other grounds, 465 U.S. 1016, 104 S.Ct. 1263, 79 L.Ed.2d 670 (1984). Whether the School District deprived her of that interest without affording adequate procedural safeguards thus depends on what process was due.
 
 
 13
 Under New York law a tenured teacher may be removed only pursuant to certain substantive and procedural safeguards, including notice and a full-blown adversarial hearing. See N.Y.Educ.Law Sec. 3020-a. On the other hand, the New York Court of Appeals has held that a prior hearing is not necessary before placing a tenured teacher on involuntary sick leave, i.e., inactive status without pay due to illness. Brown v. Bd. of Educ., 16 N.Y.2d 1021, 265 N.Y.S.2d 903, 213 N.E.2d 314 (1965). The Brown court's decision rested on the fact that the plaintiff, unlike a teacher who had been suspended or removed, retained all of her rights as a tenured teacher and could apply at anytime to be returned to active status. The court noted, moreover, that an adverse decision on Brown's application for reinstatement could be reviewed in an Article 78 proceeding in state court. Brown, 16 N.Y.2d at 1023, 265 N.Y.S.2d at 904, 213 N.E.2d at 315; see also Newman v. Board of Educ., 594 F.2d 299, 303 (2d Cir.1979) (explaining Brown ).
 
 
 14
 In the instant appeal, Strong has neither been "removed" from her teaching position, nor has she been involuntarily placed on sick leave. Under New York law, a teacher who is not permitted to return from an extended voluntary sick leave because of a failure to supply medical records is not considered suspended or terminated. Kurzius v. Board of Educ., 81 A.D.2d 827, 828, 438 N.Y.S.2d 824, 825 (2d Dep't), appeal discontinued, 54 N.Y.2d 1027 (1981). Rather, we face the mirror image of the situation confronted in Brown. Here, we have a tenured teacher who has been barred against her will from resuming teaching after a hiatus taken on her own initiative. Yet the result is the same. By refusing to automatically reinstate her following her voluntary sick leave, the School District has barred her from working and effectively cut off her salary. As in Brown, Strong retains the right to petition for reinstatement and to challenge the denial of that petition in state court. See Brown, 16 N.Y.2d at 1023, 265 N.Y.S.2d at 904, 213 N.E.2d at 315; Newman, 594 F.2d at 303.
 
 
 15
 We recognize that, ordinarily, procedural due process requires notice and an opportunity to be heard. But an important government interest, accompanied by a substantial assurance that the deprivation is not baseless or unwarranted may justify postponing the opportunity to be heard until after the initial deprivation. See, e.g., Federal Deposit Ins. Corp. v. Mallen, 486 U.S. 230, 239, 108 S.Ct. 1780, 1787, 100 L.Ed.2d 265 (1988). In cases where a pretermination hearing is required, "an initial check" to determine whether there are reasonable grounds to support the proposed action is sufficient. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 545-46, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985). Accordingly, deciding whether the procedures followed by the School District meet the constitutional minimum requires a balancing of the private and governmental interests at stake. See Loudermill, 470 U.S. at 542-43, 105 S.Ct. at 1493-94; Mathews v. Eldridge, 424 U.S. at 334-35, 96 S.Ct. at 902-03.
 
 
 16
 The private interest affected--the right of a tenured teacher to continue practicing her profession and receiving her salary--is substantial indeed. On the other hand, the School District had a strong interest in safeguarding the health and welfare of the students in the teacher's class and the other children attending the school; also, it had ample reason to question Strong's physical fitness to teach and to require more than conclusory assertions that she had regained her health.
 
 
 17
 Moreover, Strong received adequate notice in the August letters to her counsel that she was required to provide her medical records to the School District's doctor prior to returning to work. Contrary to Strong's assertions, the letters could not have provided details as to the "charges" against her, since there are no pending charges. The letters were not disciplinary; they merely sought information from which the School District's doctor could make a reasoned professional judgment about her fitness to teach.
 
 
 18
 Although Strong urges that there should have been some type of hearing before she was barred from the classroom, it is difficult to envision what would have transpired at such a hearing. She was adequately notified that the School District needed her medical records to assess her fitness to teach. The parties were well aware of each other's assertions and any further hearing would have amounted to an empty formality. See Giglio v. Dunn, 732 F.2d 1133, 1135 (2d Cir.) ("[i]f there is no factual dispute between the employer and the employee, a hearing is meaningless"), cert. denied, 469 U.S. 932, 105 S.Ct. 328, 83 L.Ed.2d 265 (1984); see also Mathews v. Eldridge, 424 U.S. at 335, 96 S.Ct. at 903 (the probable value, if any, of additional procedural safeguard is one important consideration).
 
 
 19
 Moreover, as we have noted, adequate "post-deprivation" procedures are available to protect Strong's property interest in her tenured teaching position. All the process that was due in this case has been provided. See Loudermill, 470 U.S. at 545-48, 105 S.Ct. at 1495-97.
 
 II. Right To Privacy
 
 20
 Strong also contends that even if the procedures for barring her from automatically returning to work were fair, compelling her to disclose her medical records amounts to an unconstitutional invasion of privacy.
 
 
 21
 Legitimate requests for medical information by those responsible for the health of the community do not rise to an impermissible invasion of privacy. See Whalen v. Roe, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977); Schachter v. Whalen, 581 F.2d 35 (2d Cir.1978). The Sixth Circuit recently upheld a city ordinance requiring employees returning from extended absences to divulge certain medical information. Gutierrez v. Lynch, 826 F.2d 1534, 1539 (6th Cir.1987). We find persuasive the position of the Sixth Circuit in this similar setting. As we have noted, the School District has a strong interest in protecting the children under its care. Its request for Strong's medical records, limited to the period of her absence from school, was reasonably tailored in scope and does not violate her privacy rights. See also Gargiul v. Tompkins, 704 F.2d at 669 n. 5 (implying that school district is entitled to teacher's medical records following prolonged absence).
 
 III. Other Claims
 
 22
 Strong also urges that section 913 of the Education Law, which empowers the School District to require its teachers to undergo a medical examination, is unconstitutional because it does not provide for notification of the reason for the requested examination or that a copy of the medical report on the examination be given to the teacher. We see no merit to this contention. Even if we assume the accuracy of these assertions, we fail to see any harm suffered by Strong since she was informed of the reasons for the requested examination and, in view of her refusal to submit, there was no medical report to be given to her.[3]
 
 
 23
 Since we have dismissed plaintiff's federal claims we will exercise our discretion to dismiss her pendent state claims. United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); Girard v. 94th Street and Fifth Avenue Corp., 530 F.2d 66, 72 (2d Cir.), cert. denied, 425 U.S. 974, 96 S.Ct. 2173, 48 L.Ed.2d 798 (1976).
 
 
 24
 The judgment of the district court is affirmed.[4]
 
 
 
 [1]
 The form was a request by Strong to her insurance company to have certain premiums waived because of her disability
 
 
 [2]
 In pertinent part, section 913 provides that the board "shall be empowered to require any person employed by the board of education ... to submit to a medical examination by a physician ... in order to determine the physical or mental capacity of such person to perform his duties.... The findings ... may be referred to and considered for the evaluation of service of the person examined or for disability retirement."
 
 
 [3]
 28 U.S.C. Sec. 2403(b) provides that when the constitutionality of a state statute "affecting the public interest is drawn in question" in a suit in a federal court between private parties, the court is required to "certify such fact to the attorney general of the State," and to permit the State to intervene and argue on the constitutional question. Section 913 of the Education Law certainly affects the "public interest," yet this procedure was not followed in the district court. Certification is "a duty of the court that should not be ignored, even if the claim is obviously frivolous or may be disposed of on other grounds." Merrill v. Town of Addison, 763 F.2d 80, 82 (2d Cir.1985). However, in view of the fact that neither the lower court nor this Court has questioned the constitutionality of section 913, there would be no practical purpose served by remanding with directions to allow intervention. Nor does it make sense to refrain from announcing our opinion until intervention is sought or declined by New York State. Of course, the statute cannot be ignored and it remains this Court's responsibility to allow intervention. Accordingly, it is ordered that the Clerk of this Court promptly file with the Attorney General of the State of New York a certificate in conformity with 28 U.S.C. Sec. 2403(b), and that the entry of judgment and the mandate of this Court be withheld for a period of thirty days from the date of this opinion to allow the Attorney General to take such steps as he may deem advisable. See Thatcher v. Tennessee Gas Transmission Co., 180 F.2d 644, 648 n. 7 (5th Cir.) (following similar procedure), cert. denied, 340 U.S. 829, 71 S.Ct. 66, 95 L.Ed. 609 (1950). We consider this an appropriate course of action where the claim appears frivolous or where we will not even reach the constitutional issue. To certify the question without an indication that we are not reaching the issue might well burden the Attorney General unnecessarily, while wasting the time of the parties and this Court
 
 
 [4]
 The School Board has requested that sanctions be imposed on Strong for pursuing this appeal. That request is denied