**Eligio CASTRO, Plaintiff,**

v.

**NEW YORK CITY BOARD OF EDUCATION; Gloria Rakovic; Ellen Victor; Noel Kriftcher; Judith Halioua; United Federation of Teachers; and John Doe, Defendants.**

No. 89 Civ. 4114 (KTD).

United States District Court,
S.D. New York.

June 14, 1990.

Eligio Castro, pro se.

Peter L. Zimroth, Corp. Counsel of the City of New York (Suzanne L. Bailey, Peter Cahill, Asst. Corp. Counsel, of counsel), New York City, for defendants.

James R. Sandner (J. Christopher Meagher, of counsel), New York City, for United Federation of Teachers.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge.

Plaintiff Eligio Castro, a former probationary High School Spanish teacher employed by defendant New York City Board of Education (the "Board"), brings this *pro se* action challenging the termination of his employment as being in violation of the Fifth and Fourteenth Amendments of the United States Constitution. Castro seeks compensatory and punitive damages, along with reinstatement, back pay, and other declaratory relief. Defendants Board of Education and various supervisors and administrators at his high school (together the "City defendants"),[1] as well as Castro's former union, defendant United Federation of Teachers ("UFT")[2], move pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss the amended complaint for failure to state a claim upon which relief can be granted. Castro cross-moves for summary judgment, a preliminary injunction, severance of the action, and separate trials. Additionally, Castro has made various discovery requests.[3]

## FACTS

On February 1, 1988, Castro was appointed a probationary Spanish language instructor at the High School of Telecommunication Arts and Technology in Brooklyn.

---

1. While Castro's initial complaint named neither the New York State Commissioner of Education nor the state Education Department as a defendant, Castro sent copies to the Commissioner "identified in this complaint as John Doe." There was nothing in the complaint to identify the Commissioner, who did not appear or answer. The amended complaint was not served on and makes no mention of the State, its Commissioner of Education, or its Education Department. Thus, even if the Commissioner or the Education Department could be construed as parties named in the initial complaint, Castro has since dropped them as parties in the same manner as if he had voluntarily dismissed them pursuant to Fed.R.Civ.P. 41.

2. As a New York City teacher, Castro was a member of the collective bargaining unit represented by the UFT, the exclusive representative for collective bargaining purposes under New York Civil Service Law §§ 200–214 for all teachers employed by the New York City Board of Education and the Community School Districts.

3. Both before and after the submission of the motions to dismiss, Castro served numerous and confusing discovery requests and motions on the defendants. UFT's request to stay discovery pending determination of the motions to dismiss was granted by this court.

As a result of periodic substitute teaching appointments, Castro was credited with one and one-half years service toward the three years of probationary service required to be completed before tenure may be granted. N.Y.Educ.L. § 2573(1)(a) (McKinney 1981 & Supp.1989). According to New York law, the required probationary service may be discontinued "at any time during such probationary period." N.Y.Educ.L. § 2573(1)(a).

Following reports of Castro's unsatisfactory performance, based on in-class observations, Castro was informed, by letter dated May 28, 1989, that due to his unsatisfactory teaching performance, *inter alia*, the principal would recommend discontinuance of his probationary period, which was to expire on August 8, 1989. Amended Complaint Exh. A.

By letter dated June 15, 1989, Castro filed a grievance under the collective bargaining agreement between the Board and the UFT which contested the recommendation of discontinuance. Amended Complaint, Exh. C. His grievance was rejected, and Castro then appealed to the next step of the grievance procedure. Amended Complaint, Exh. D. On June 21, 1989, Castro also made a separate "appeal" to the Chancellor of the Board, challenging the factual basis for the recommendation of discontinuance and requesting either certification of his probationary period as completed, or that a hearing be held regarding the discontinuance of his probationary status. Amended Complaint, Exh. B.

A hearing was held on June 27, 1989 on Castro's appeal of the grievance. Castro challenged the entry into his personnel file of evaluation reports and other documents which provided partial basis for the recommendation of discontinuance. The Hearing Officer rejected the grievance as untimely, noting that Castro had been afforded the opportunity to respond to the reports placed into his file in the past, but had not done so. Amended Complaint, Exh. F. On June 28, 1989, the discontinuance of Castro's probationary period was finalized, which effectively terminated his employment.

Castro raises several due process claims in his amended complaint. He claims denial of due process by virtue of (1) the placing of administrative observations and letters in his file upon which the recommendation to discontinue probationary service was based, Amended Complaint ¶ 3; (2) the Board's failure to timely respond to a contract grievance over his alleged deprivation of liberty interest, ¶ 7; (3) the failure to be afforded a hearing prior to discontinuance, ¶ 8; (4) the Board's failure to provide him a requested "Interim Relief" prior to dismissal, ¶ 11; and (5) the Board's denial of his appeal and his subsequent dismissal, ¶ 12. Castro also alleges denial of equal protection because he was required to punch a timeclock while other teachers allegedly were not. Amended Complaint ¶ 5. He further raises various alleged violations of the rights of bilingual students by virtue of the Board's practices regarding bilingual education. Finally, Castro brings various state claims against the City defendants arising from the circumstances of his dismissal. With regard to the UFT, Castro apparently claims that the UFT violated its duty of fair representation by its failure to request a "Special Complaint," pursuant to the Board/UFT Agreement, that "may have" prevented his dismissal. Amended Complaint ¶ 8.

## DISCUSSION

### I. *Due Process Claims*

Castro's due process claims hinge on his contention that he had a property interest in his probationary teaching position and was thus entitled to a due process hearing prior to his dismissal. At the outset, Castro must show that he possesses a property interest protected by the Constitution. *Strong v. Board of Education*, 902 F.2d 208, 211 (2d Cir.1990). If a protectable property interest is found, then it must be determined whether Castro was deprived of that interest without due process. *Id.* The "constitutional contours of due process turn on the specific circumstances of the case, including the governmental and private interests at issue." *Id.* Due process is therefore a "flexible concept requiring

only such procedural protection as the particular situation demands." *Id.*

■ Property interests in employment positions are not created by the Constitution but are defined by state law. *Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976); *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Pursuant to § 2573(1)(a) of the New York Education Law, a probationary period of three years must be served by any teacher appointed by the Board. A probationary teacher may be discontinued at any time during the probationary period. A recommendation to grant or deny tenure must then be made and notice given to the teacher at least sixty days before the expiration of probation.[4]

■ It is well settled under New York law that a probationary employee has no property rights in his employment and may be terminated for "almost any reason or no reason at all." *Venes v. Community School Board*, 43 N.Y.2d 520, 525, 373 N.E.2d 987, 990, 402 N.Y.S.2d 807, 810 (1978); *James v. Board of Educ.*, 37 N.Y.2d 891, 892, 340 N.E.2d 735, 378 N.Y.S.2d 371 (1975). Thus, probationary teachers essentially serve at will. A probationary employee who has been dismissed is therefore not entitled to a hearing, unless such an employee can show a violation of statutory law or a constitutionally impermissible purpose underlying the termination. *York v. McGuire*, 63 N.Y.2d 760, 761, 469 N.E.2d 838, 480 N.Y.S.2d 320 (1984).

■ Because Castro did not have a protectable property interest in his probationary teaching position, due process did not require a hearing prior to his dismissal. Moreover, Castro has alleged no more than vague conclusions. No hard facts support his contention that the City defendant's decision to terminate his probationary teaching position was made for a constitutionally impermissible purpose. As such,

his allegations are insufficient to state a constitutional claim. *See Martin v. New York State Dep't of Mental Hygiene*, 588 F.2d 371, 372 (2d Cir.1978) (a complaint consisting of nothing more than naked assertions and setting forth no facts upon which a court could find a violation of the Civil Rights Acts, fails to state a claim under Fed.R.Civ.P. 12(b)(6)).

■ In addition, a special proceeding pursuant to Article 78, N.Y.Civ.Prac.L. & R. §§ 7801–7806 (McKinney 1981), provides a constitutionally adequate post-deprivation remedy to redress Castro's loss of employment. *See Giglio v. Dunn*, 732 F.2d 1133, 1135 (2d Cir.1984), *cert. denied*, 469 U.S. 932, 105 S.Ct. 328, 83 L.Ed.2d 265 (1984). Castro may similarly avail himself of an appeal provided by the Board's by-laws.

■ Castro further alleges that the City defendants deprived him of due process by placing allegedly defamatory documents, which he had refused to read, into his personnel file, and then later rejecting his grievances contesting the documents. Castro claims that, although he was given the opportunity to read the documents, due process requires that he cannot be held accountable for knowledge of their contents unless he actually read them. Specifically, he argues that "what we are asking this court to rule upon is whether, a person can by virtue of the fact that he is offered something to read (which he declines) be held accountable for the contents of the matter therein. We don't believe so. The documents were thus entered into the file in violation of due process." Amended Complaint at 2b.

■ All documents placed in Castro's file were placed there in accordance with due process protections. Castro could have appended responses to each document, but chose not to do so. When he declined to review the documents placed in his personnel file, he waived his right to challenge the documents. Castro's claim of interference with his liberty interest arising out of

---

**4.** Following the grant of tenure, teachers hold their positions during good behavior and efficient and competent service, and shall not be removed except for cause after a hearing as provided by N.Y.Educ.L. § 3020–a.

his refusal to read the documents, and out of the placement of such documents in his personnel file, borders on the frivolous and is therefore dismissed.

## II. Equal Protection

■ Castro contends that he was denied equal protection of the law because he was forced to punch a timeclock on arrival at work, while other teachers allegedly were not required to do so, and because his timecard was allegedly hidden which resulted in his being marked absent. The Fourteenth Amendment provides that no state shall deny to any citizen the equal protection of the laws. The constitutional guarantee of equal protection is "the right to be free from invidious discrimination in statutory classifications and other governmental activity." Harris v. McRae, 448 U.S. 297, 322, 100 S.Ct. 2671, 2691, 65 L.Ed.2d 784 (1980), reh. denied, 448 U.S. 917, 101 S.Ct. 39, 65 L.Ed.2d 1180 (1980). That right is violated when the state draws a distinction between individuals based on unreasonable, arbitrary, or capricious differences that are irrelevant to a legitimate governmental objective. Lehr v. Robertson, 463 U.S. 248, 265, 103 S.Ct. 2985, 2995, 77 L.Ed.2d 614 (1983).

■ Even assuming Castro's allegations are true and according them a liberal construction, Castro fails to identify any statutory classification or governmental activity which has resulted in an invidious discrimination. Nor has he sufficiently alleged any disparity or discrimination that affect rights held by him. As such, his equal protection claim is dismissed.

■ Castro further contends that "by virtue of being a teacher of children whose liberty interests and constitutional rights protected under the Civil Rights Act, were denied when defendants violated the bilingual law as set forth in the amended complaint and subsequently deemed admitted, has a valid claim against defendant." Plaintiff's Motion for Summary Judgment ¶ 4A. It is well settled that "[o]rdinarily, one may not claim standing ... to vindicate the constitutional rights of some third party," Singleton v. Wulff, 428 U.S. 106, 114, 96 S.Ct. 2868, 2874, 49 L.Ed.2d 826 (1976) (quoting Barrows v. Jackson, 346 U.S. 249, 255, 73 S.Ct. 1031, 1033, 97 L.Ed. 1586 (1953), reh. denied, 346 U.S. 841, 74 S.Ct. 19, 98 L.Ed. 361 (1953)). The attempt by Castro to assert an equal protection claim on behalf of bilingual education students must therefore fail for lack of standing.

## III. Duty of Fair Representation

Castro also alleges, in essence, that the UFT violated its duty of fair representation due to its refusal to file a "Special Complaint," pursuant to Article 23 of the Board/UFT agreement, on Castro's behalf.[5] According to Castro the "Special Complaint" provides a remedy for teachers "who are subjected to harassment and intimidation," and that, if the union would have acted, Castro may not have been dismissed. Amended Complaint ¶ 8.

■ A union may be implicated in the breach of its duty of fair representation only if the employer has substantially breached the collective bargaining agreement, and the union's actions are shown to have arbitrarily, discriminatorily, or in bad faith foreclosed the employee's opportuni-

---

5. Castro's second apparent claim against UFT, contained not in the amended complaint but in a lengthy memorandum attached to the complaint, challenges the constitutionality of Articles 21(c)(1) and 21(c)(1)(b) of the Board/UFT Agreement. These provisions incorporate a review procedure for the discontinuance of a probationary teacher as prescribed in § 5.3.4 of the by-laws of the Board. Castro claims that the advisory nature of this review procedure does not guarantee him due process and is therefore unconstitutional. Amended Complaint pp. 2(b)–2(e). The advisory discontinuance review procedure is merely a procedural scheme to review the discontinuance of a probationary teacher who serves at will. Venes v. Community School Board, 43 N.Y.2d 520, 525, 373 N.E.2d 987, 402 N.Y.S.2d 807 (1978). New York courts have held that the Board must comply with this procedure leading to an advisory determination, but that due process safeguards beyond that are not constitutionally required. See Clausen v. Board of Educ., 39 A.D.2d 708, 331 N.Y.S.2d 855 (2d Dep't 1972). Moreover, it is clear that with regard to this claim, Castro has not exhibited a constitutionally protectable property interest to which due process safeguards attach.

ties to vindicate such wrong through the grievance process. *See Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). Castro has shown neither element. A school district's decision to deny tenure is not reviewable by a grievance under a collective bargaining agreement because neither arbitrators nor contract provisions can award tenure. Granting tenure is a non-delegable duty vested solely in the discretion of the school district. *Cohoes City School Dist. v. Cohoes Teachers Assoc.*, 40 N.Y.2d 774, 358 N.E.2d 878, 390 N.Y.S.2d 53 (1976). Moreover, a Special Complaint results in merely an advisory "fact finder" report not binding on the Board, and which cannot compel the Board to annul Castro's probationary discontinuance and dismissal. *See* Meagher Affid.Exh. A. Thus substantive review of the tenure decision and prevention of Castro's dismissal are beyond the scope of the Special Complaint which Castro claims he was wrongfully denied. Accordingly, the UFT's failure to pursue a "Special Complaint" in no way implicated a breach of the duty of fair representation.

In sum, Castro fails to allege any constitutional violation sufficient to withstand a motion to dismiss. As such, both motions to dismiss are granted. Because Castro's federal claims are dismissed, his state law claims must fall as well. Castro's cross-motions are denied.

The complaint is therefore dismissed in its entirety as to all defendants.

SO ORDERED.