In re PVI ASSOCIATES, a Pennsylvania General Partnership, Debtor.

PVI ASSOCIATES, a Pennsylvania General Partnership, Plaintiff,

v.

The REDEVELOPMENT AUTHORITY OF MONTGOMERY COUNTY, and Borough of Conshohocken, and Montgomery County Commissioners, and Gerald McTamney, and James T. Mullen, III, and Lucius Carter, and Sandra Caterbone, and Vincent Totaro, and Robert Storti, Defendants.

Bankruptcy No. 93–15543 SR.
Adv. No. 94–0890.

United States Bankruptcy Court, E.D. Pennsylvania.

April 28, 1995.

Frederic J. Baker, Asst. U.S. Trustee, Office of U.S. Trustee, Philadelphia, PA.

Frank J. Perch, Spector Gadon & Rosen, P.C., Philadelphia PA.

Bruce Nicholson, Duffy, North, Wilson, Thomas & Nicholson, Hatboro, PA.

Joseph J. Santarone, Jr., Marshal, Dehenney, Warner, Coleman & Coggin, Norristown, PA.

David MacMain, Montgomery, McCracken, Walker & Rhoads, Philadelphia, PA.

Lawrence J. Lichtenstein, Buchanan Ingersoll, a P.C., Philadelphia, PA.

### OPINION

STEPHEN RASLAVICH, Bankruptcy Judge.

#### Introduction.

The above debtor, PVI Associates, ("PVI") a Pennsylvania General Partnership, has filed an adversary action against the numerous above named defendants alleging violations of its constitutional and civil rights. PVI seeks injunctive and declaratory relief with respect to the alleged violations, together with compensatory damages, punitive damages, costs and attorneys fees. The respective defendants have filed three separate Motions to Dismiss the adversary action pursuant to Federal Rule of Civil Procedure 12(b)(6). These Motions have been briefed by all parties and are ripe for adjudication. For the reasons discussed herein, the Motions will be granted in part, and denied in part.

#### Background.

PVI is the owner of certain improved and unimproved parcels of real property located in the Borough of Conshohocken. The improved properties at issue herein are more specifically known as "One First Avenue," "2 Elm Street," and "10 Oak Street." All of the land owned by PVI lies within an area (the "Redevelopment Area") which has been identified as "blighted" in an Urban Redevelopment Plan (the "Redevelopment Plan") prepared by the Planning Commission of the Borough of Conshohocken (the "Planning Commission"), and subsequently adopted, along with a plan of implementation (the "Redevelopment Proposal") by Defendants, the Borough of Conshohocken (the "Borough") [1], the Redevelopment Authority of the County of Montgomery (the "Redevelopment Authority"), and the Commissioners of the County of Montgomery (the "County Commissioners"). The Redevelopment Plan, generally speaking, is a Plan designed to facilitate the reconstruction and rehabilitation of blighted land in the Redevelopment Area.

PVI's grievances relate to both the *inclusion* of certain of its unimproved property within the Redevelopment Area, as well as the *exclusion* of certain other improved realty (10 Oak Street) from the Redevelopment Area. PVI complains, moreover, that the Redevelopment Plan, as amended, is discriminatory in that it provides more favorable treatment for a particular land owner (Donald W. Pulver or a Pulver affiliated entity) which is not generally made available under the Redevelopment Plan to PVI or other owners of property within the Redevelopment Area. In particular, PVI maintains that actions and/or omissions of the Borough,

---

1. As noted in the case caption of this adversary proceeding, PVI has also named as Defendants all of the individual Borough Council members.

the County Commissioners, and the Redevelopment Authority in connection with adoption and subsequent modification of the Redevelopment Plan, have been arbitrary, capricious and malicious. In its complaint, PVI asserts 6 counts arising from its grievances, as follows:

Count I—Violation of Equal Protection Clause of the 14th Amendment to the United States Constitution.

Count II—Violation of PVI's Civil Rights under the Civil Rights Act, 42 U.S.C. § 1983.

Count III—Violation of the Takings Clause of the 5th Amendment to the United States Constitution as applied to the States through the 14th Amendment to the United States Constitution.

Count IV—Unlawful taking of property in violation of Article I § 10 of the Constitution of the Commonwealth of Pennsylvania.

Count V—Breach of Contract.

Count VI—Request for Declaratory Judgment.

PVI seeks a broad spectrum of affirmative equitable relief ranging from modification of the Redevelopment Plan to an Order declaring the Redevelopment Plan void. As noted, PVI also seeks compensatory and exemplary damage awards.

Certain of the issues raised by the Defendants in their respective dismissal Motions are common to more than one of them and where appropriate these will be considered jointly.

At the outset the Court notes that there is no disagreement between the parties as to the law applicable to the Court's consideration of the instant dismissal motions, as indeed there should not be given the well established body of law on this point. The Court must accept as true all well pleaded allegations contained in the Complaint, and must construe them in a light most favorable to the Plaintiff. The Complaint should be dismissed only where it appears beyond a doubt that the Plaintiff can prove no set of facts in support of a claim which would entitle it to relief. *Labov v. Lalley,* 809 F.2d 220 (3d Cir.1987), citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). In this respect, too, the Court is to draw all reasonable inferences from the conceded factual allegations, and construe the same in favor of the non-moving party. *Greenwood v. Singel,* 823 F.Supp. 1207, 1210 (E.D.Pa.1993). Conversely, however, the Court need not accept as true any conclusionary allegations of law, nor make any unwarranted inferences of fact. *Flanagan v. Shively,* 783 F.Supp. 922, 927 (M.D.Pa.1992).

**A. THE PLAN AS A PARTICIPATORY PROCESS/THE STATUTORY SCHEME**

■ At the outset, each Defendant group argues that a claim cannot be stated as to it because its role in the adoption of the Plan was tangential compared to the more central roles of others. In this respect, the parties all agree that under the enabling statute (the Pennsylvania Urban Redevelopment Law, 35 P.S. 1701, *et seq.*) the local municipal planning commission is the entity which is initially empowered to identify blighted or redevelopment areas, and to then create for such areas a redevelopment plan. Thereafter, the local redevelopment authority is charged with preparation of a proposal for redevelopment of all or a portion of the lands within a redevelopment area. The local redevelopment authority submits its proposal back to the local planning commission for a recommendation, and thereafter conveys the proposal to the "governing body," in this case the County Commissioners. The County Commissioners are charged to conduct a public hearing on the Authority's proposal. The County Commissioners may thereafter approve the proposal, but they are prohibited from doing so if the local municipality (here, the Borough) has objected. If approved, the redevelopment proposal is returned to the local redevelopment authority for implementation.

In view of the foregoing, each defendant group maintains that it is the wrong entity to be sued. Specifically, all stress the fact that the Planning Commission is the originator of a Redevelopment Plan. While this is of course true, it is likewise readily apparent, indeed it is conceded by the Defendants, that

the entire process is a collaborative one in which each defendant group is expected to and does fully participate. In the cases of the Redevelopment Authority and County Commissioners, this participation takes the form of certain affirmative duties and responsibilities. In the case of the Borough, the participation exists, *inter alia,* by virtue of the veto power given to the Borough under the enabling legislation.

PVI maintains that at each level of government the foregoing collaborative process has been the product of bad faith and maliciously motivated conduct. In this respect, the division of responsibilities as set forth in the Urban Redevelopment Law does not, and in this Court's view should not, insulate a particular governmental actor from liability if its own conduct at any stage is shown to possess constitutionally proscribed animus. In so concluding the Court does not see itself as "pushing the envelope" of theoretical governmental liability, since, on the one hand, other courts have already held that the constitutionality of a Redevelopment Authority's actions in the redevelopment plan process is subject to judicial review, *Crawford v. Redevelopment Authority of Fayette County,* 418 Pa. 549, 211 A.2d 866 (1965); *In re City of Scranton,* 132 Pa.Cmwlth. 175, 572 A.2d 250 (1990), while on the other hand no persuasive argument has been advanced as to why a different standard should exist for other participating governmental actors (such as the Borough and the County Commissioners). The Motions to Dismiss of all Defendants, to the extent predicated on the foregoing argument, shall therefore be denied.

## B. *IMMUNITY FROM SUIT*

■ All of the individual defendants, i.e., the County Commissions and the Borough Council Members, as well as the Redevelopment Authority, argue that they are immune from suit based on the doctrine of sovereign or governmental immunity. The Court finds these assertions persuasive as to all of the individual defendants and the instant Complaint will therefore be dismissed as to the

County Commissioners and the Borough Council Members. The argument of the Redevelopment Authority, on the other hand, fails to persuade, and its dismissal Motion in this context will accordingly be denied.

In *Acierno v. Cloutier,* 40 F.3d 597 (3d Cir.1994), the Third Circuit Court of Appeals issued its most recent pronouncement on this subject. In *Acierno,* the Court held that municipal officials are afforded absolute immunity for civil rights claims arising out of legislative acts. PVI focuses on *Acierno's* limited restriction to "legislative" acts as opposed to "administrative" acts, as to which local government officials are not protected by absolute legislative immunity [2] and argues that the individual defendants and the Redevelopment Authority cannot meet the required test of demonstrating that their alleged unconstitutional actions were both "substantially legislative" (i.e., involving policy making or line drawing decisions), and procedurally legislative (i.e., undertaken through established legislative procedures). In this respect, PVI points to the decision of the United States Supreme Court in *Gravel v. United States,* 408 U.S. 606, 625, 92 S.Ct. 2614, 2627, 33 L.Ed.2d 583 *reh'g denied,* 409 U.S. 902, 93 S.Ct. 98, 34 L.Ed.2d 165 (1974), wherein the Court held that a substantially legislative act is one that is an integral part of legislative action, and to the later holding of the Court of Appeals for the Fourth Circuit in *Roberson v. Mullins,* 29 F.3d 132 (4th Cir.1994), wherein the Court held that a local governmental body's acts are substantially legislative when the governmental body is engaged in a process of adopting prospective, legislative-type rules. In this respect, PVI argues that the complained of acts on the part of the individual defendants, specifically the alleged arbitrary and intentional inclusion and exclusion of PVI lands within the Redevelopment Area takes those actions beyond the protection otherwise extended to governmental officials for broad, municipal-wide type land use legislation. The Court disagrees.

**2.** *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 *reh'g denied,* 446

U.S. 993, 100 S.Ct. 2979, 64 L.Ed.2d 850 (1980)

■ While the Court does agree that the extension of immunity is not a function merely of the label or title of the officials whose acts are under scrutiny, *Coffey v. Quinn,* 578 F.Supp. 1464 (N.D.Ill.1983), the Court nevertheless does not concur with PVI that the nature of the complained of acts here is such that they fall on the administrative rather than the legislative side of the fence. The identification of a redevelopment area, and the formulation and adoption of a Plan and Proposal which addresses the area in its entirety has a distinctly legislative flavor to it, in that it applies generally to a significant number of properties and a wide area of land in a manner similar to the wide area application of a zoning code. In that vein, the complained of actions are more akin to those at issue in *Bass v. Attardi,* 868 F.2d 45 (3d Cir.1989); *Foerst v. Banko,* 662 F.Supp. 275 (E.D.Pa.1984); *Jodeco, Inc. v. Hahn,* 674 F.Supp. 488 (D.N.J.1987); *Kent Island Joint Venture v. Smith,* 452 F.Supp. 455 (D.R.I. 1978); and *Carroll v. City of Prattville,* 653 F.Supp. 933 (M.D.Ala.1987), all of which cases are cited by the individual defendants and all of which represent instances wherein the legislative immunity of municipal officials was upheld.

■ The same result does not follow for the Redevelopment Authority. The Redevelopment Authority is a body corporate and politic created and organized pursuant to the Pennsylvania Urban Redevelopment Law, 35 P.S. 1701 *et seq.* Its individual members have not been named as defendants in this action. The Authority argues that it is immune from suit under Article I, Section 11 of the Constitution of the Commonwealth of Pennsylvania which provides that "suits may be brought against the Commonwealth in such manner, in such courts, and in such cases as the legislature may by law direct." In this respect the Authority relies further on the provisions of 1 Pa.C.S.A. § 2310, wherein the Pennsylvania Legislature has declared it to be the intent of the General Assembly that the Commonwealth and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign and official immunity and remain

immune from suit except as the general assembly shall specifically waive the immunity. Accordingly, in the absence of a specific statutory waiver of sovereign immunity, the Authority argues that, as an agent of the Commonwealth,[3] it is immune from suit. Alternatively, the Authority argues that even if it is not deemed to be an agent of the Commonwealth, but is instead considered a local agency, PVI's claim against it is nevertheless barred by governmental immunity pursuant to 42 Pa.C.S.A. § 8541 *et seq.* PVI has the better part of this argument because regardless of whether the authority is viewed as a local or state agency, it remains true that neither the concept of sovereign nor governmental immunity is designed to insulate governmental agencies from claims arising under the State Constitution. See *Coffman v. Wilson Police Department,* 739 F.Supp. 257, 266 (E.D.Pa.1990); *see also, Redevelopment Authority v. Woodring,* 498 Pa. 180, 445 A.2d 724 (1982); *Williams v. City of Pittsburgh,* 109 Pa.Cmwlth.Ct. 168, 531 A.2d 42 (1987), aff'd, 498 Pa. 180, 445 A.2d 724 (1982). In this respect, the Court readily concurs with the observations of the *Coffman* Court which noted that it would indeed be peculiar if the legislature, through the passage of a statute, could abrogate rights protected by the Constitution when the Constitution, by law, can be amended only in strict accordance with mandated procedures. See *Stander v. Kelley,* 433 Pa. 406, 250 A.2d 474, *appeal dismissed,* 395 U.S. 827, 89 S.Ct. 2130, 23 L.Ed.2d 738 (1969).

Turning then to the individual Counts of the Complaint:

**Count I—Violation of Equal Protection Clause of the 14th Amendment to the United States Constitution.**

■ Count I of PVI's Complaint is a substantive due process challenge to the Redevelopment Plan and Redevelopment Proposal, as amended. Specifically, PVI asserts that the Redevelopment Plan and Proposal are arbitrary and capricious and were adopted by the Defendants in bad faith with a design to unfairly discriminate against PVI and in favor of another specific landowner.

**3.** *See Herriman v. Carducci,* 475 Pa. 359, 380 A.2d 761 (1977).

This is another issue wherein the parties basically agree on the applicable law, however they differ in their respective application of that law to the pleading now before the Court. The applicable standard has been variously described. In *Rogin v. Bensalem Township,* 616 F.2d 680, 687 (3d Cir.1980), the Third Circuit Court of Appeals indicated that the test was whether or not the actions of which the Plaintiff complains were rationally related to a legitimate purpose. Alternatively, the United States Supreme Court has indicated that it will strike legislation for irrationality or arbitrariness only where the governmental body could have had no legitimate reason for its decision. *See Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 15, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976); *Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 464, 101 S.Ct. 715, 723–24, 66 L.Ed.2d 659 (1981); *Vance v. Bradley,* 440 U.S. 93, 111, 99 S.Ct. 939, 949–50, 59 L.Ed.2d 171 (1979)

In this respect, the Borough observes that the Federal Courts are cautioned not to substitute their judgment about land use policies unless a municipality's application of such police power is without a plausible rational basis. *Pace Resources, Inc. v. Shrewsbury Township,* 808 F.2d 1023, 1035 (3d Cir.1987).

██ For its part, PVI notes that under applicable notice pleading standards, it is not required to plead all of the facts which underlie its allegations in evidential detail. *Alco Standard Corp. v. Schmid Brothers Inc.,* 647 F.Supp. 4 (S.D.N.Y.1986). Nor is it required to utilize "buzz words" or text book definitions. To the contrary, citing *Dennis v. Village of Tonka Bay* 151 F.2d 411, 412 (8th Cir.1945) and *Castro v. New York City Board of Education,* 777 F.Supp. 1113 (S.D.N.Y. 1990), *aff'd,* 923 F.2d 844 (2d Cir.), *cert. denied,* 498 U.S. 1099, 111 S.Ct. 992, 112 L.Ed.2d 1076 (1991), PVI argues that inclusion of a simple description of the complained of acts accompanied by an allegation that the same are or were arbitrary, capricious and/or unreasonable, is sufficient for its complaint to survive a dismissal motion.

The Court concurs with PVI. In the first place, PVI's complaint adequately describes the specific nature of its grievance with the Redevelopment Plan and Redevelopment Proposal; to wit: the exclusion of the 10 Oak Street property from the Redevelopment Area, the inclusion in the Redevelopment Area of PVI's undeveloped real estate, and the discriminatory treatment afforded to another specifically named landowner alleged to exist by reason of certain amendments to the Redevelopment Plan and the Borough's Zoning Ordinance. These allegations are sufficiently specific to put all defendants on notice of the factual basis of PVI's Complaint. Similarly, the articulation of separate counts in the Complaint sufficiently put all parties on notice of the legal underpinning of PVI's claimed entitlement to relief.

In the second place, whether individual governmental officials have acted in bad faith and with improper motivations in connection with the Redevelopment Plan and/or the Redevelopment Proposal is an inquiry which is peculiarly factual in nature. The Court rejects the invitation of the Defendants to find proof positive as to the rationality of their collective actions and motivations merely by reference to the documentation relative to the Redevelopment Plan which is attached to the Borough's dismissal motion. To do so would be inconsistent with the Court's obligation in this context to resolve doubts in favor of the non-movant.

On the basis of the foregoing, therefore, the Borough and the Redevelopment Authority's Motion to Dismiss as to Count I shall be denied.

### Count II—Violation of PVI's Civil Rights under the Civil Rights Act, 42 U.S.C. § 1983

#### A. *Punitive Damages*

██ PVI's Count II is a claim for violation of its civil rights pursuant to 42 U.S.C. § 1983. The inclusion of this count is somewhat puzzling because, as the Borough correctly observes, § 1983 of the Civil Rights Act does not provide substantive rights. Rather, it is a vehicle through which to address the deprivation of rights guaranteed under the United States Constitution. *Chapman v. Houston Welfare Rights Organization,* 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979). In this instance, PVI has sepa-

rately set forth, in other Counts of its Complaint, its individual claims under the 5th and 14th Amendments to the United States Constitution. PVI's need for a separate Count under the Civil Rights Act is at first blush puzzling, however, it becomes more understandable when one notes that punitive damages are available under the Civil Rights Act and PVI has sought the same in this adversary action. In this respect, however, the only remaining defendants to this action after dismissal of the action as to the individual defendants, will be the Borough and the Redevelopment Authority. Each of these Defendants asserts that a punitive damage claim will not lie against it. The Court agrees.

 As to the Borough, the general rule is that punitive damages are not allowed against a municipality unless expressly authorized by statute. *City of Newport v. Fact Concerts Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). Recently the Third Circuit Court of Appeals extended the holding of *City of Newport* to a case involving the Southeastern Pennsylvania Transportation Authority (SEPTA) on the basis that it was a hybrid entity with substantial connections to government at the state and local level which was created by the government for purposes of carrying out public policy. *Bolden v. SEPTA*, 953 F.2d 807 (3d Cir.1991) Allowing an award of punitive damages against SEPTA, the Court held, would only serve to punish taxpayers and the users of SEPTA's services through increased taxes or fares. The Redevelopment Authority seeks a similar extension of the *City of Newport* holding in this instance for basically similar reasons. PVI argues against such an extension citing *DiGiovanni v. City of Philadelphia*, 531 F.Supp. 141 (E.D.Pa.1982), citing *Carey v. Piphus*, 435 U.S. 247, 257, 98 S.Ct. 1042, 1048–49, 55 L.Ed.2d 252 (1978). These cases, PVI asserts, stand for the proposition that the *City of Newport* holding does not set forth a blanket categorical restriction on the imposition of punitive damages. The Court disagrees, in part. *City of Newport* does set forth a blanket categorical holding as to municipalities, but not as to officials and employees thereof. The distinction between a municipality and its officials for these pur-

poses was observed in *DiGiovanni v. City of Philadelphia*. As noted, this action will be dismissed as to the individual defendants leaving only one municipal and one quasi municipal defendant. The punitive damages claim as to the municipal defendant, i.e., the Borough, will be dismissed consistent with *City of Newport, supra*. As to the Redevelopment Authority, no compelling argument has been advanced as to why the general rule of *City of Newport* should not be applied in this instance, and extended as was done in *Bolden v. SEPTA, supra*. Indeed, in this respect, the Court finds that the activities of the Redevelopment Authority do constitute it a hybrid entity with certain similarities to SEPTA such that neither the retributive nor the deterrent functions of punitive damages would be significantly advanced in permitting their award in this instance. A result consistent with *Bolden v. SEPTA, supra*, is therefore appropriate. Accordingly, Count II, and the remaining counts in Plaintiff's Complaint to the extent they seek recovery of punitive damages, shall be dismissed as to both of the remaining defendants.

### B. *Remainder of PVI's 1983 Claim*

The above disposition of the punitive damage component of PVI's Count II leaves the gravamen of that Count largely identical to the causes of action separately asserted in other Counts of the Complaint, i.e., Count I (Equal Protection) and Count III (Unjust Taking). In light of this, the separate articulation of PVI's § 1983 claim in Count II appears somewhat redundant. Section 1988 of the Civil Rights Act, however, also makes recovery of costs and attorney fees available to a prevailing litigant. Accordingly, independent grounds still exist to retain Count II provided PVI's allegations of constitutional violations as set forth elsewhere in the Complaint otherwise survive dismissal. As hereinbefore discussed, PVI's Fourteenth Amendment equal protection claim will not be dismissed. Moreover, as discussed below, PVI's Fifth Amendment taking claim is also sufficient to withstand dismissal. PVI's related claim as to each under 42 U.S.C. § 1983 likewise therefore withstands dismissal.

### Counts III and IV: Taking of Property Without Just Compensation in Violation of Federal and State Constitutions

The Borough and the Redevelopment Authority each argue that PVI's Counts III and IV, which basically set forth inverse condemnation claims, must be dismissed because PVI has failed to exhaust its State Court remedies. Specifically, the Borough and the Redevelopment Authority point to the fact that a remedy for the *de facto* taking which PVI asserts it has suffered by reason of 1) the inclusion of its undeveloped land within the Redevelopment Area and 2) the failure of municipal authorities to proceed with condemnation of such land, exists under the Pennsylvania Eminent Domain Code, 26 P.S. § 1 *et seq.* In this regard, the Borough and the Redevelopment Authority are indeed able to cite to numerous cases which support this proposition. *Williamson County Regional Planning Commission v. Hamilton Bank,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985); *Samaad v. City of Dallas,* 940 F.2d 925, 934 (5th Cir.1991); *Cassettari v. Nevada County,* 824 F.2d 735 (9th Cir.1987); *Estate of Himelstein v. City of Fort Wayne,* 898 F.2d 573 (7th Cir.1990).

In response, PVI observes that none of the cases cited by the Borough and the Redevelopment Authority arose in the context of a bankruptcy case. While PVI, for its part, has not cited a case directly on point, it has cited the cases of *National and Institutional Builders Co. v. Goldstein,* 658 F.2d 39 (2d Cir.1981), *cert. denied,* 454 U.S. 1149, 102 S.Ct. 1014, 71 L.Ed.2d 303 (1982); *In re Lloyd,* 37 F.3d 271 (7th Cir.1994); *Eastport Associates v. City of Los Angeles,* 114 B.R. 686 (C.D.Cal.1990), *aff'd,* 935 F.2d 1071 (9th Cir.1991); and *San Clemente Estates v. City of San Clemente,* 12 B.R. 209 (Bankr.S.D.Cal. 1981) for the proposition that the Bankruptcy Court has jurisdiction to deal with issues involving State land use laws which arise in the context of a case under Title 11.

■ The Court believes that PVI's position represents the better view. The grant of jurisdictional authority under the Bankruptcy Code is broad and designed to permit the Court to effectively address issues which may have a material effect on property of a Bankruptcy Estate and/or a debtor's ability to reorganize. This fact is perhaps underscored by the observation that in this case if the instant municipal authority itself, as condemnor, wishes to affirmatively initiate the condemnation process, it would first be required to seek relief from the automatic stay. *See In re Quality Supplier General Partnership,* 176 B.R. 135 (Bankr.D.Md.1994)

■ In this instance, the Court is satisfied that jurisdiction to consider PVI's constitutional claims exists. *See Brick v. Department of Transportation,* 9 B.R. 435 (N.D.Cal. 1981). In particular, the Court is satisfied that PVI has sufficiently pled the potential affect on its bankruptcy case which the allegations supporting its inverse condemnation claim portend. Accepting these facts as true for purposes of the instant dismissal motion results in a conclusion that the Motion at this juncture, as to Counts III and IV, must be dismissed. The existence of jurisdiction, however, and the survival of these claims, *vis a vis,* a dismissal motion, are quite separate from the question of whether it is in the best interest of the Debtor and its creditors to have PVI's inverse condemnation claims heard in this Court. As to this latter question, the Court has serious reservations, particularly in light of the existence of a specialized and readily available procedure under the Pennsylvania Eminent Domain Code. Accordingly, while the Motion to Dismiss PVI's taking claims for failure to exhaust State Court remedies will be denied at present, a prompt follow-up hearing will be scheduled for the purpose of considering whether abstention under 11 U.S.C. § 305(a) is appropriate.

### Count V—*Breach of Contract*

PVI's Count V relates to a certain "Contract for Sale of Land for Private Development" attached to its Complaint as Exhibit "B." The document itself runs between the Redevelopment Authority, and a corporation named Meehan–Weinmann, Inc. or its nominee. According to the Complaint, PVI is the nominee of Meehan–Weinmann, Inc.'s rights under the Contract. The essence of PVI's grievance related to the Contract is that the passage of the Redevelopment Plan and its

subsequent amendment, without PVI's written consent, constitute a breach of the Contract. The Redevelopment Authority has moved to dismiss this rather straight forward contention arguing that the Complaint fails to contain allegations that the Redevelopment Authority has violated or breached any of the terms of the said Contract. Giving the Redevelopment Authority the benefit of every doubt this contention appears slightly ridiculous, since the Complaint, regardless of its merits, rather clearly sets forth PVI's contentions in this respect. The Redevelopment Authority's Motion to Dismiss Count V shall therefore be denied.

The Borough also seeks dismissal of Count V observing, among other things, that it is not a named party to the Contract. While this is true, the Contract attached as Exhibit B to PVI's Complaint does contain a certain document entitled "Joinder and Consent" executed by the Borough wherein the Borough "joins in, consents and agrees to perform" certain responsibilities of the Redevelopment Authority under the Contract. In view of that fact, it would be premature to dismiss PVI's Count V as to the Borough, for as hereinbefore noted, PVI's assertions as to a breach of the agreement are sufficiently pled to withstand a dismissal motion as to the Redevelopment Authority. In view of the foregoing facts, the Borough, regardless of liability in the first instance, could, alternatively, have vicarious liability for the Redevelopment Authority's obligations under the Contract.

### Count VI—*Declaratory Judgment*

PVI's Count VI consists of the following three paragraphs

78. PVI hereby incorporates by reference paragraphs 1 through 77 of the Complaint s if the same were set forth fully herein at length.

79. The Plan, as adopted, will have significant adverse financial effects upon PVI.

80. Defendants have no adequate remedy under law.

The Borough and the Redevelopment Authority have each moved to dismiss Count VI believing it to form the underpinning upon which PVI bases its request for broad equitable relief including modification or nullification of the Redevelopment Plan and Redevelopment Proposal. In particular, the Borough and the Redevelopment Authority argue that under the guise of PVI's Count VI, PVI is attempting to have this Court act as a super appellate zoning body and supplant its own review of the underlying land use issues for that of more appropriate State Court authorities. In this respect, both defendants cite, *inter alia,* to *Kent Island Joint Venture v. Smith,* 452 F.Supp. 455 (D.R.I.1978) for the proposition that this Court should abstain from review of the land use issues raised by PVI and defer in that respect to Pennsylvania's State Courts. While it is somewhat unclear if the Borough and the Redevelopment Authority have correctly identified the precise intention of PVI through its inclusion of Count VI, the above operative paragraphs, i.e., Paragraphs 79 and 80, are sufficiently specific that they survive a dismissal Motion. Beyond that, they are sufficiently general in nature such that their resolution will simply follow naturally in the course of the disposition of the remaining counts of PVI's Complaint, wherever they are ultimately heard. As hereinbefore indicated, no decision with respect to abstention has yet been reached by this Court. Rather, that question will be addressed and resolved at the supplemental hearing scheduled pursuant to the Order with accompanies this Opinion. Accordingly, the Motion to Dismiss Count VI will at this juncture be denied.

An Order consistent with the foregoing conclusions will be entered herein.

### ORDER

**AND NOW,** this 28th day of April, 1995, upon consideration of the Motions to Dismiss filed by the Defendants in the above captioned adversary action, the Debtor's opposition thereto, and the legal memoranda of the parties, it is, for the reasons expressed in the within Opinion, hereby:

**ORDERED,**

1. The above adversary action shall be and hereby is DISMISSED as to the following individually named defendants, GERALD MCTAMNEY, JAMES T. MULLEN, III, LUCIUS CARTER, SANDRA CATER-

BONE, VINCENT TOTARO, ROBERT STORTI, MARIO MELE, JON FOX, AND JOSEPH HOEFFEL, III.

2. Counts I through V of the above adversary action to the extent they seek the recovery of punitive damages, shall be and hereby are dismissed.

3. The Motions to dismiss Counts I through VI are, in all other respects, hereby DENIED.

4. A supplemental hearing to consider the propriety of the Court's abstention under 11 U.S.C. § 305(a) shall be and hereby is scheduled for Monday, May 15, 1995, at 9:30 A.M. in Courtroom No. 3, 2713 U.S. Courthouse, 601 Market Street, Philadelphia, PA 19106.