Beate BERNHEIM, Plaintiff–Appellant,

v.

Jeffrey LITT, Defendant–Appellee.

No. 724, Docket 95–7592.

United States Court of Appeals, Second Circuit.

Argued Dec. 22, 1995.

Decided March 25, 1996.

David Bernheim, New York City, for plaintiff-appellant.

Barry P. Schwartz, Assistant Corporation Counsel, Margaret G. King, Assistant Corporation Counsel, New York City (Paul A. Crotty, Corporation Counsel of the City of New York), for defendant-appellee.

Before: JACOBS, CALABRESI, Circuit Judges, and SPATT, District Judge.*

JACOBS, J., concurs in part B of the opinion, and concurs in a separate opinion as to part C.

SPATT, District Judge.

In this action, brought pursuant to 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the Constitution, the plaintiff-appellant Beate Bernheim ("Bernheim") appeals from a judgment of the United States District Court for the Southern District of New York, which was entered on May 18, 1995, dismissing her complaint against the defendant-appellee Jeffrey Litt

---

* The Honorable Arthur D. Spatt, District Judge, United States District Court for the Eastern District of New York, sitting by designation.

("Litt") in its entirety for failure to state a cognizable federal claim. Bernheim's federal claims were dismissed with prejudice, and her state claims were dismissed without prejudice. On appeal, Bernheim argues that her complaint sufficiently alleged actionable claims under 42 U.S.C. § 1983. For the reasons set forth below, we find that only one of her Section 1983 claims sets forth a valid cause of action.

## BACKGROUND

Bernheim is an elementary school teacher in Community School 67 ("CS 67") in Bronx County, New York. She commenced this action pursuant to 42 U.S.C. § 1983, in New York Supreme Court, Westchester County, on June 22, 1994. Her complaint alleges that the school's principal, Jeffrey Litt, discriminated against her based on her race and that he violated her First Amendment right to free speech. On July 22, 1994 the defendant removed the action to federal court. Bernheim moved to amend the complaint and Litt cross-moved to dismiss the complaint, pursuant to Fed.R.Civ.P. 12(b)(6). Bernheim subsequently withdrew her motion, then moved to file a second amended complaint and sought a jury trial. The district court granted Bernheim's motion to amend and considered Litt's motion to dismiss to be addressed to the second amended complaint. In dismissing the complaint, the district court ruled that the disputes in this case arose out of employment relationships of a New York City school teacher, did not allege a constitutional violation, and should be addressed through employee grievance procedures, citing *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983).

On June 13, 1995, Bernheim filed a timely notice of appeal. In an order dated June 16, 1995, Judge Brieant stated that Bernheim's pending appeal prevented him from amending the dismissal order, in the interest of justice, to remand the state claims to the Supreme Court of the State of New York, where the action was originally filed.

## DISCUSSION

### A. The Rule 12(b)(6) standard

■■■ We review *de novo* the district court's dismissal for failure to state a claim.

*Rent Stabilization Ass'n v. Dinkins,* 5 F.3d 591, 593 (2d Cir.1993). A complaint may not be dismissed under Rule 12(b)(6) unless it " 'appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Allen v. WestPoint–Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir.1991)(quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). In reviewing a Rule 12(b)(6) motion, this Court must accept the factual allegations of the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 117, 130 L.Ed.2d 63 (1994). The review of such a motion is limited, and " '[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.' " *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir.1995)(quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974)).

■■■ Recovery may appear remote and unlikely on the face of the pleading, but that is not the test for dismissal. *Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 673 (2d Cir.1995) (citing *Scheuer, supra,* 416 U.S. at 236, 94 S.Ct. at 1686). Furthermore, the " 'standard is applied with even greater force where the plaintiff alleges civil rights violations....' " *Id.* (quoting *Hernandez, supra,* 18 F.3d at 136).

As the Supreme Court has stated,

[b]y the plain terms of § 1983, two—and only two—allegations are required in order to state a cause of action under that statute. First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law.

*Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980). Bernheim alleges that Litt, a public school official acting under color of state law, deprived her of certain rights guaranteed by the Constitu-

tion. *See Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

Bernheim's amended complaint alleges two federal causes of action and one state law cause of action against Litt. The first cause of action alleges that Litt discriminated against Bernheim on the basis of her race and in violation of her constitutional rights to procedural due process and equal protection. The second cause of action alleges violations of state law rights. The third cause of action alleges that Litt retaliated against Bernheim for exercising her First Amendment right to free speech.

### B. *The due process and equal protection claims*

The amended complaint alleges that prior to January 1, 1992, Litt entered into an arrangement with an organization known as Core Knowledge Foundation ("Core"), and offered to introduce the curriculum advocated by Core to CS 67. Bernheim alleges that Litt created a "Core Knowledge Committee" and designated Bernheim as its co-chairperson.

The amended complaint further alleges that in March 1992, Litt selected Bernheim to represent CS 67 at a convention of the American Federation of Teachers. Bernheim was scheduled to speak at the convention about the Core curriculum program. Bernheim, who is white, alleges that prior to the convention the Core Knowledge Foundation requested of Litt by means of a written memoranda, that Bernheim be removed from the speakers' list and that a minority teacher be sent in her stead. She further alleges that Litt, who is also white, then designated a minority teacher to speak at the convention. Bernheim concedes, however, that the "Core Knowledge Committee" of CS 67 overruled Litt and decided against sending a representative to the convention.

According to the amended complaint, during the period from March 1992 until October 1994, Litt discriminated against Bernheim based on her race and retaliated against her because she complained about the racial discrimination. The amended complaint alleges that Litt retaliated against Bernheim by doing the following acts: removing Bernheim from the position of staff developer and then appointing a white woman to that position; appointing another white woman as the library teacher, a position that Bernheim previously held; transferring Bernheim from her out-of-classroom library position to a sixth-grade classroom teaching position and requiring her to serve lunchroom duty; reducing her preparation periods from two to one per day; assigning her to a fifth floor classroom knowing that she had difficulty climbing stairs because of physical disabilities, which included a herniated disc, a bulging disc, a fractured right knee and a loose body in her left knee; failing to properly process insurance forms in connection with a car accident involving Bernheim; and removing a lock and her belongings from her storage areas.

As stated above, to properly set forth an actionable claim for deprivation of procedural due process under 42 U.S.C. § 1983, a plaintiff must assert that the defendant deprived her of a right, privilege or immunity secured by the Constitution or the laws of the United States. *Gomez, supra,* 446 U.S. at 640, 100 S.Ct. at 1923–24; *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 1604–05, 26 L.Ed.2d 142 (1970). This Bernheim does not do. Bernheim did not have a right to deliver a speech to the American Federation of Teachers Convention, remain in the position of library teacher, be appointed staff developer, have two periods per day to prepare for her classes or to keep her belongings in a particular place area. These are features of Bernheim's working conditions, which are not protected by the Constitution.

To state a cause of action under the due process clause, a plaintiff must show that she has a property interest, created by state law, in the employment or the benefit that was removed. *See Castro v. New York City Bd. Of Educ.,* 777 F.Supp. 1113, 1116–17 (S.D.N.Y.), *aff'd,* 923 F.2d 844 (2d Cir.1990), *cert. denied,* 498 U.S. 1099, 111 S.Ct. 992, 112 L.Ed.2d 1076 (1991). The New York Court of Appeals has stated that the concept of tenure in the teaching profession "does not entitle a teacher to a specific class or pro-

scribe assignment to proper duties of a teacher other than classroom teaching of a specific subject." *Adlerstein v. Board of Educ. of New York City,* 64 N.Y.2d 90, 99, 485 N.Y.S.2d 1, 5, 474 N.E.2d 209, 212–13 (1984). Furthermore, where the complained-of conduct concerns matters that are within an official's discretion, entitlement to that benefit arises only when the discretion is so restricted as to virtually assure conferral of the benefit. *See Gagliardi v. Village of Pawling,* 18 F.3d 188, 192 (2d Cir.1994) (citing *Brady v. Town of Colchester,* 863 F.2d 205, 213 (2d Cir.1988)). Bernheim complains of acts that are alterations of working conditions that cannot provide a basis for a constitutional claim and, if in contravention of Bernheim's contractual rights, may be redressed through employee grievance procedures and an Article 78 proceeding in the state court. *See Giglio v. Dunn,* 732 F.2d 1133 (2d Cir.) (finding that an Article 78 proceeding satisfied the due process requirement of providing a hearing at a meaningful time and in a meaningful manner), *cert. denied,* 469 U.S. 932, 105 S.Ct. 328, 83 L.Ed.2d 265 (1984).

 The Fourteenth Amendment guarantee of equal protection is "a right to be free from invidious discrimination in statutory classifications and other governmental activity." *Harris v. McRae,* 448 U.S. 297, 322, 100 S.Ct. 2671, 2691, 65 L.Ed.2d 784 (1980). That right is violated when the state distinguishes between individuals based on "unreasonable, arbitrary, or capricious differences that are irrelevant to a legitimate government objective." *Castro, supra,* 777 F.Supp. at 1118 (S.D.N.Y.) (citing *Lehr v. Robertson,* 463 U.S. 248, 265, 103 S.Ct. 2985, 2995, 77 L.Ed.2d 614 (1983)). Even accepting her allegations as true and construing them liberally, Bernheim has not stated such a claim.

██ The discrimination alleged was the decision to send a minority speaker to the American Federation of Teachers convention in Bernheim's place. But that decision was overruled by the CS 67 Core Knowledge Committee. In the circumstances of this case, we hold that no invidious discrimination took place. The remaining harms that Bern-

heim sets forth in her equal protection claim are alleged to be the product, not of discrimination, but of retaliation for her complaints of discrimination. Although claims of retaliation are commonly brought under the First Amendment, *see infra,* and may also be brought under Title VII (claims of retaliation for complaints about racial discrimination are cognizable under 42 U.S.C. § 2000e–3(a)), we know of no court that has recognized a claim under the equal protection clause for retaliation following complaints of racial discrimination. Given the availability of Title VII, which Bernheim has chosen not to invoke, we see no reason to break new constitutional ground in this case. *Cf. Ratliff v. DeKalb County,* 62 F.3d 338, 340–41 (11th Cir. 1995)(no clearly recognized right to be free from retaliation exists under the equal protection clause); *Gray v. Lacke,* 885 F.2d 399, 414 (7th Cir.1989)(claim for retaliation must be brought under Title VII, not under the equal protection clause), *cert. denied,* 494 U.S. 1029, 110 S.Ct. 1476, 108 L.Ed.2d 613 (1990). Accordingly, Bernheim's equal protection claim cannot stand.

Because the amended complaint does not state an actionable claim alleging a violation of the equal protection clause or a deprivation of procedural due process, the district court properly dismissed Bernheim's first cause of action.

*C. The First Amendment claim*

The amended complaint sets forth additional facts in support of Bernheim's First Amendment claim. In particular, the amended complaint alleges that Litt widely publicized numerous misrepresentations regarding the achievements of students at CS 67 and also knowingly published false statistics concerning test scores of the students for the purpose of enhancing his own reputation and that of the school. According to the amended complaint, Litt changed the name of the school to Mohegan School, making it difficult for parents, members of the community and educators to discover and verify that the false claims made by Litt were different than the official test results and actual achievements of the students. Bernheim alleges that commencing in June 1994, she

reported Litt's misrepresentations regarding the false test scores and student achievements to various authorities including the Superintendent of Schools, members of the School Board and the Chancellor of the New York City schools. The amended complaint alleges that the Bronx Commission on the Integrity of School Officials wrote to the plaintiff requesting that she contact the agency with regard to the false information Litt was allegedly circulating. In addition, Bernheim alleges that one of the deputy mayors of New York City wrote to her to inform her that the Mayor's office was reviewing the issues that she raised. Further, Bernheim detailed Litt's alleged misrepresentations in the complaint that she filed in Westchester County Supreme Court in June, 1994, and she sent a copy of the original complaint to Litt's supervisors.

Bernheim alleges that Litt retaliated against her for her speaking out as to the alleged false student information, with essentially the same acts she complains about in her claim under the Fourteenth Amendment, namely, removing her from the positions of staff developer and librarian; assigning her to classroom work; reducing her preparation periods from two to one; assigning her to lunchroom duty; removing her belongings from her storage area; sending negative evaluation letters criticizing her work; failing to process insurance forms; and wrongfully accusing her of absenteeism. Bernheim also alleges that in retaliation for criticizing Litt, he assigned her to a fifth floor classroom with a schedule that required frequent trips to the main floor, even though he knew that she suffered from certain physical disabilities that made it difficult for her to climb stairs, namely, a herniated disc, a bulging disc, a fractured right knee and a loose body in her left knee.

■ To establish a retaliation claim under Section 1983,

a plaintiff "initially [must] show that [his] conduct was protected by the first amendment," *Brady*, 863 F.2d at 217, and that defendants' conduct was motivated by or substantially caused by his exercise of free speech, *Easton v. Sundram*, 947 F.2d 1011, 1015 (2d Cir.1991), *cert. denied*, 504 U.S.

911, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992)....

*Gagliardi, supra*, 18 F.3d at 194 (alterations in original).

■ A public employee's right to freedom of speech is not absolute. *See e.g., Waters v. Churchill*, 511 U.S. ——, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994); *Jeffries v. Harleston*, 52 F.3d 9 (2d Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 173, 133 L.Ed.2d 114 (1995). When a dispute arises relating to the First Amendment rights of a public employee, the courts must balance the employee's right to comment on matters of public concern with the government's interest as an employer to effectively and efficiently provide public services. *Connick v. Myers*, 461 U.S. 138, 142, 103 S.Ct. 1684, 1687, 75 L.Ed.2d 708 (1983); *Pickering v. Board of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734–35, 20 L.Ed.2d 811 (1968). However, when a public employee speaks as a citizen on a matter of public concern, that speech is entitled to First Amendment protection. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

■ Some of Bernheim's speech related to the conditions of her employment at CS 67 and her rejection as a speaker for the Core program at the AFT convention, which are matters of personal interest. Judge Brieant correctly concluded that these statements concern a dispute between employer and employee and as such do not rise to the level of a constitutional tort.

[W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior. *Cf. Bishop v. Wood, supra*, 426 U.S., at 349–350, 96 S.Ct., at 2079–2080. Our responsibility is to ensure that citizens are not deprived of fundamental rights by virtue of working for the government; this does not require a grant of immunity for employee griev-

ances not afforded by the First Amendment to those who do not work for the State.

*Connick, supra,* 461 U.S. at 147, 103 S.Ct. at 1690.

■ However, other statements alleged by Bernheim to have elicited retaliation from Litt concern an entirely different subject matter. In this regard, the facts alleged by Bernheim differ from those in *Connick, supra,* 461 U.S. at 154, 103 S.Ct. at 1693–94, where the plaintiff employee's alleged protected speech directly concerned an office policy that was the basis of a prior dispute between the employee and the employer. Bernheim's statements regarding the quality of education provided by the public school as measured by achievement test scores and their year-to-year improvement or deterioration on a schoolwide basis may reasonably be considered a matter of public concern. These are issues of serious interest to the community and Bernheim should be able to speak freely about them without fear of retaliation. *See id.,* 461 U.S. at 149, 103 S.Ct. at 1691.

■ Clearly, Bernheim may not base her claim of retaliation upon complained-of acts that predated her speaking out about Litt's alleged misrepresentations. *See Blum v. Schlegel,* 18 F.3d 1005, 1010 (2d Cir.1994). Apparently, the plaintiff's first reassignment, from staff developer to library teacher, occurred prior to the plaintiff's comments regarding Litt's alleged misrepresentations as to the achievements of CS 67 students. However, the amended complaint is otherwise chronologically sound, with other alleged retaliatory acts set forth as occurring after the plaintiff made the comments in question. The plaintiff's amended pleading sets forth the necessary nexus between her statements concerning a matter of public concern and the defendant's subsequent alleged retaliatory acts. *See Gagliardi, supra,* 18 F.3d at 195. The facts alleged by Bernheim, if proven, could support an inference that her public statements regarding misrepresentations by Litt about the CS 67 student test scores and other achievements were a substantial motivating factor in the adverse employment actions taken against her. *See*

*Blum, supra,* 18 F.3d at 1010 (citing *Ezekwo v. NYC Health and Hosp. Corp.,* 940 F.2d 775, 780–81 (2d Cir.), *cert. denied,* 502 U.S. 1013, 112 S.Ct. 657, 116 L.Ed.2d 749 (1991)).

■ The defendant argues that even if the complained-of acts are causally related to the statements Bernheim made, she fails to allege any legally cognizable harm. He asserts that absent from the factual scenario set forth in the complaint is any allegation that Bernheim was dismissed from her employment. However, this is not necessarily fatal to her claim. The plaintiff does allege that her reputation, opportunities for advancement and earning potential have been impaired by the acts of the defendant. *See* Amended Compl. ¶¶ 86, 92. The Court notes that the amended complaint also claims that Litt told a parent of one of Bernheim's students that a statement Bernheim made regarding the availability of textbooks was a lie. *See* Amended Compl. ¶ 88. In addition, Bernheim alleges that her reassignment to the position of classroom teacher, after she held out-of-classroom positions for five years, was a demotion. Amended Compl. ¶ 78. In that regard, Bernheim further claims that she had nineteen years experience teaching in the public schools, eleven and one-half of which were spent at CS 67, and that her professional evaluations were consistently outstanding and were never negative. *See* Amended Compl. ¶¶ 78, 85. Bernheim also contends that she was compelled to climb five flights of stairs numerous times a day despite the fact that she had a herniated disc, a bulging disc, a fractured right knee and a loose body in her left knee. Amended Compl. ¶ 80. Assuming these facts to be true, as the Court must when reviewing a district court's dismissal of a complaint for failure to state a claim under Rule 12(b)(6), actionable harm may be perceived, which, if proven, could entitle Bernheim to Section 1983 relief.

The amended complaint also alleges that as a result of her public statements against Litt, Bernheim has endured a campaign of harassment, "which caused her great worry and unhappiness." Amended Compl ¶ 92. "It is a basic principle of tort law in general, and of civil rights law in particular, that

compensable injuries may include not only monetary losses such as out-of-pocket expenses but also injuries such as 'personal humiliation' and 'mental anguish.'" *Henry v. Gross*, 803 F.2d 757, 768 (2d Cir.1986)(quoting *Memphis Community Sch. Dist. v. Stachura*, 477 U.S. 299, 307, 106 S.Ct. 2537, 2543, 91 L.Ed.2d 249 (1986)). The plaintiff's claim of "great worry and unhappiness" could reasonably be read as a claim for emotional distress, a legally recognized and compensable harm.

■ In addition, where a constitutional deprivation is alleged, the question arises as to the plaintiff's entitlement to nominal damages, even in the absence of facts supporting an award of compensatory damages. "In an action brought pursuant to Section 1983, 'even when a litigant fails to prove actual compensable injury, he is entitled to an award of nominal damages upon proof of violation of a substantive constitutional right.'" *Gibeau v. Nellis*, 18 F.3d 107, 110 (2d Cir.1994) (quoting *Smith v. Coughlin*, 748 F.2d 783, 789 (2d Cir.1984), which cites *Carey v. Piphus*, 435 U.S. 247, 267, 98 S.Ct. 1042, 1054, 55 L.Ed.2d 252 (1978)). Such an award "is not discretionary where a substantive constitutional right has been violated...." *Gibeau, supra*, 18 F.3d at 110–11.

We agree with the concurring opinion that a number of Bernheim's claimed damages and acts of retaliation, treated separately, would be trivial and do not rise to the level of a constitutional violation. However, in our view, it would be burdensome to have the district court "prune" a complaint at the pleading stage by making a determination with regard to each allegation within a cause of action that is legally cognizable when viewed in its totality. This balancing process and assessment and elimination of non-constitutional claims is more appropriately undertaken by the district court at a later stage of the proceedings, namely upon review of motions pursuant to Rule 56 or Rule 50. We believe that such an analysis is not required within the context of a motion to dismiss for failure to state a cause of action under Rule 12(b)(6). In addition, the integrity of the complaint as a whole with respect to the First Amendment claim should be preserved at this early phase of the action.

Accepting the allegations of the complaint as true and construing them favorably to the pleader, we find Bernheim has stated a legally cognizable claim under Section 1983 and the First Amendment. So saying, we give no opinion as to the merits of this claim or its likelihood for success, but merely find that the complaint itself states a cause of action upon which relief may be granted. Accordingly, that portion of the district court's judgment that dismissed the third cause of action in the amended complaint, which claims a violation of the plaintiff's First Amendment rights, is reversed.

## CONCLUSION

Based on the foregoing, that part of the district court's judgment that dismissed the plaintiff's first cause of action, which alleges due process and equal protection deprivation in violation of the Fourteenth Amendment, is affirmed. The district court's dismissal of the third cause of action, which alleges retaliation for statements protected by the First Amendment, is reversed, and that cause of action is reinstated. Finally, the plaintiff's supplemental state law claims, which were dismissed by the district court following its rejection of Bernheim's federal claims, are reinstated.

JACOBS, Circuit Judge, concurring:

I concur in the judgment and in the majority opinion except for Part C, as to which I write separately in order to reach an issue that I think is fairly presented. Judge Brieant held that the plaintiff has no retaliation claim because she "has not been deprived of her job status or her employment." I think this holding frames an issue that we should address. I vote to reverse because I think that the proper standard for the sufficiency of First Amendment retaliation claims is somewhat more nuanced, and that the proper standard cannot be categorically applied on this record under Rule 12(b)(6) to all of Bernheim's allegations. At the same time, I think that in reversing we should consider whether the proper standard was applied and, if not, what the proper standard is.

It is beyond question that a state agency may not discharge, refuse to rehire, fail to promote, or demote a public employee in retaliation for speaking on a matter of public concern. *Rutan v. Republican Party*, 497 U.S. 62, 75, 110 S.Ct. 2729, 2737, 111 L.Ed.2d 52 (1990); *Pickering v. Board of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734–35, 20 L.Ed.2d 811 (1968). Certainly, Beatte Bernheim spoke on a matter of public concern. But the role of the courts in assessing First Amendment claims alleging retaliation (such as this one) "is to seek 'a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern *and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'*" *Connick v. Myers*, 461 U.S. 138, 142, 103 S.Ct. 1684, 1687, 75 L.Ed.2d 708 (1983) (quoting *Pickering*, 391 U.S. at 568, 88 S.Ct. at 1734–35) (emphasis added). We should seek this balance even at the Rule 12(b)(6) pleading stage, treating retaliation as actionable only if, measured by a standard of reasonableness, it affects employment in a way that is both detrimental and substantial. Absent dismissal, transfer or refusal to rehire, retaliation is what reasonably may be deemed a demotion. *See Rutan*, 497 U.S. at 75, 110 S.Ct. at 2737.

In my view, many of the instances of retaliation alleged by this plaintiff are either (i) petty, or (ii) adverse only by reason of her personal preference for other arrangements, or (iii) both. Bernheim has not suffered dismissal, reduction in pay, or demotion in rank. Her assignment to a particular class, classroom or supply closet—even if she prefers another class, classroom or supply closet—does not appreciably impact on her employment as an elementary school teacher. Even if it would matter, she has not alleged that she had a job right in any of these things by law, by contract or otherwise. Some of her grievances amount to nothing more than a demand that the court suppress all manifestations of annoyance by a person she has publicly and repeatedly vilified. As to other grievances, such as the number of teacher preparation periods, she has not alleged (although she suggests) that she was singled out for disadvantage. Nevertheless,

I concur in the reversal because it is conceivable that one or more of the claims of retaliation, under circumstances not evident at the pleading stage, may arguably add up to a demotion.

In *Pickering,* the Supreme Court held that "a teacher's exercise of his right to speak on issues of public importance may not furnish the basis for his *dismissal* from public employment." 391 U.S. at 574, 88 S.Ct. at 1737–38 (emphasis added). *Pickering,* and the precedents in which it was rooted, recognized that a public employee's First Amendment rights could be "'chilled' by the *fear of discharge."* *Connick,* 461 U.S. at 145, 103 S.Ct. at 1689 (emphasis added); *see also Elrod v. Burns,* 427 U.S. 347, 372, 96 S.Ct. 2673, 2689, 49 L.Ed.2d 547 (1976) (impermissible to terminate government employees by reason of political affiliation). Cases following *Pickering* extended this principle to the refusal to rehire. *See, e.g., Givhan v. Western Line Consolidated Sch. Dist.,* 439 U.S. 410, 417, 99 S.Ct. 693, 697–98, 58 L.Ed.2d 619 (1979) (plaintiff must show that "she would have been rehired but for her criticism") (emphasis omitted); *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977) (discussing burden-shifting framework for First Amendment claim alleging defendant improperly failed to rehire plaintiff); *Perry v. Sindermann,* 408 U.S. 593, 598, 92 S.Ct. 2694, 2698, 33 L.Ed.2d 570 (1972) (impermissible to not rehire teacher who testified before state legislature).

In *Connick v. Myers,* the Court warned that lesser claims of retaliation do not amount to constitutional torts:

Our holding today is grounded in our longstanding recognition that the First Amendment's primary aim is the full protection of speech upon issues of public concern, as well as the practical realities involved in the administration of a government office.... [I]t would indeed be a Pyrrhic victory for the great principles of free expression if the Amendment's safeguarding of a public employee's right, as a citizen, to participate in discussions concerning public affairs *were confused with the attempt to*

*constitutionalize the employee grievance that we see presented here.*

461 U.S. at 154, 103 S.Ct. at 1694 (emphasis added). Neither *Connick* nor any of the other authorities cited above considered whether the employer's action was sufficiently detrimental to support a claim for relief. It was not until *Rutan v. Republican Party* that the Supreme Court held that an employee who suffered an adverse employment action *other* than dismissal could maintain a First Amendment tort suit. 497 U.S. at 75, 110 S.Ct. at 2737. In that case, the Seventh Circuit had held that the only actionable employment decisions are those that are the "substantial equivalent of a dismissal." 868 F.2d 943, 955 (7th Cir.1989). The Supreme Court rejected this test as "unduly restrictive because it fails to recognize that there are deprivations less harsh than dismissal that nevertheless press state employees and applicants to conform their beliefs and associations to some state-selected orthodoxy," 497 U.S. at 75, 110 S.Ct. at 2737, and held that "promotions, transfers, and recalls after layoffs based on political affiliation or support are an impermissible infringement on the First Amendment rights of public employees." *Id.* As in *Connick,* however, the Court warned that "[t]he First Amendment is not a tenure provision, protecting public employees from actual or constructive discharge." *Id.* at 76, 110 S.Ct. at 2737–38.

A few circuits have drawn a line between actionable claims of retaliation and those insufficient to support a claim,[1] employing a balancing process that approximates what the Supreme Court contemplated in *Pickering* and its progeny. In *Dorsett v. Board of Trustees for State Colleges & Univs.,* 940 F.2d 121, 123 (5th Cir.1991), the Fifth Circuit upheld summary judgment in favor of the defendants, holding that a state university

professor who alleged "that various administrative decisions had harmed his reputation, that he had been unfairly denied summer employment and salary increases, and that he had suffered other miscellaneous harassments" could not maintain an action for retaliation. The Fifth Circuit explained that

> [t]he continuing retaliatory actions alleged by [the plaintiff] appear to be nothing more than decisions concerning teaching assignments, pay increases, administrative matters, and departmental procedures. We recognize that such decisions might seem extremely significant to [the plaintiff] who has devoted his life to teaching. But we believe, nevertheless, that the alleged harms suffered by [the plaintiff] do not rise to the level of a constitutional deprivation.

*Id.* The Fifth Circuit found that the balance favored the state's interest in efficiently and effectively educating students:

> In public schools and universities across this nation, interfaculty disputes arise daily over teaching assignments, room assignments, administrative duties, classroom equipment, teacher recognition, and a host of other relatively trivial matters. A federal court is simply not the appropriate forum in which to seek redress for such harms.

*Id.*

In *Agosto–de–Feliciano v. Aponte–Roque,* 889 F.2d 1209, 1212 (1st Cir.1989), the First Circuit, sitting *in banc,* considered "what type of employer action short of dismissal will support a claim for violation of the plaintiffs' right of free political association." The plaintiffs, career bureaucrats in the Puerto Rico Department of Public Education, were members of the New Progressive Party. That political party was forced out of power

---

**1.** Some circuits have addressed that question obliquely or in *dicta. See, e.g., Dahm v. Flynn,* 60 F.3d 253, 257 (7th Cir.1994) ("agree[ing] that . . . a dramatic downward shift in skill level required to perform job responsibilities can rise to the level of an adverse employment action," but rejecting plaintiff's claim because supervisor enjoyed qualified immunity); *Smith v. Fruin,* 28 F.3d 646, 649 n. 3 (7th Cir.1994) (stating that "even minor forms of retaliation can support a First Amendment claim," but holding that speech

was on a matter of personal concern, and thus not actionable), *cert. denied,* —— U.S. ——, 115 S.Ct. 735, 130 L.Ed.2d 638 (1995); *Tao v. Freeh,* 27 F.3d 635, 639 (D.C.Cir.1994) (stating that "[e]mployer action taken against an employee . . . need not be as significant as the denial of promotion to raise a constitutional claim," but resting decision on ground that defendant imposed "more burdensome promotion requirements" in retaliation).

when the Popular Democrats won the 1984 gubernatorial election. *Id.* at 1212–13. The plaintiffs alleged that, in retaliation for their political allegiance, their duties were reduced, they were re-assigned to new positions, and their supervisory authority was reduced or eliminated. *Id.* at 1213–14. The district court found for the plaintiffs after a bench trial. On appeal, defendants argued that the plaintiffs had no claim under the First or Fourteenth Amendments. *Id.* at 1214.

The First Circuit recognized that, "if the threshold for an actionable constitutional violation were low, we believe employees would too often resort to litigation when the employer's action was actually apolitical in nature." *Id.* at 1216. According to *Agosto–de–Feliciano*, the balancing approach announced in *Connick* and *Pickering*

> suggest[s] that insubstantial changes in an employee's work conditions and responsibilities, even when politically motivated, either would not reasonably chill the employee's exercise of the right to free political association, or would cause a level of burden that is almost certainly outweighed by the government's need to protect its own interest....

*Id.* at 1217. The court then "turn[ed] to [its] primary task, the creation of a workable standard for recognizing a violation of a civil servant's freedom of association." *Id.* After rejecting several approaches that placed "an impermissibly high burden" on the right to free speech, *see id.* at 1218, the court determined that the constitutional threshold is

breached "when the employer's challenged actions result in a work situation 'unreasonably inferior' to the norm for the position." *Id.*[2]

Then–Judge Breyer concurred in the balance struck by the majority because

> [o]n the one hand, it permits suits designed to show a serious, politically motivated "demotion." On the other, it seeks to prevent juries from simply supplanting civil service commissions—by insisting that the relevant harm be severe, that it be shown by clear and convincing evidence, and that it correspond roughly to the types of significant harm that the court illustrates with examples.

*Id.* at 1224 (Breyer, J., concurring in part and dissenting in part). Judge Breyer observed that "*not only* [may] the lack of *any* protection ... open the door to unwarranted, politically based victimization, but also ... too much judicial intervention may unjustifiably interfere with the electorate's ability to see its political aims translated into action." *Id.*

The majority opinion in this case does not close the door to eventual summary disposition of Bernheim's claims at a later stage of proceedings on the ground that they do not amount to claims of demotion. But I believe that we should engage in some balancing at this stage, in order to avoid turning the First Amendment "a tenure provision," *Rutan*, 497 U.S. at 76, 110 S.Ct. at 2737–38, and to prevent "constitutionaliz[ing]" employee grievances.[3] *Connick*, 461 U.S. at 154, 103 S.Ct. at 1693–94.

---

2. The First Circuit has recognized that the Supreme Court's decision in *Rutan* changed the landscape of *Agosto–de–Feliciano* by categorically extending First Amendment protection to government employment decisions concerning hiring, promotion and transfer. *See Nereida–Gonzalez v. Tirado–Delgado*, 990 F.2d 701, 705 (1st Cir.1993). The First Circuit has surmised that *Agosto–de–Feliciano* now provides "an intermediate First Amendment haven for employees wounded by slings and arrows less damaging than those described by the *Rutan* Court," but the court has not ruled definitively on *Rutan*'s effect on *Agosto–de–Feliciano*. *Id.* at 705. *But see Rodriguez–Pinto v. Tirado–Delgado*, 982 F.2d 34, 42 (1st Cir.1993) (Torruellea, J., concurring) (expressing view that *Agosto–de–Feliciano* is no longer authoritative precedent).

3. We need not look far to see where such abuses lead. Bernheim filed her initial complaint on June 21, 1994. I agree with my colleagues that the racial discrimination claim asserted in that pleading is meritless. What is interesting is that Bernheim was not inspired to publicize criticisms of Principal Litt until (as dated in the amended complaint) sometime "in June 1994." The earliest public letter that she annexed to her complaint was dated June 22, 1994. In short, her public speech and her meritless litigation are contemporaneous. It may be that Bernheim's publicity campaign denouncing her principal was public spirited; but it also may be just a second front in a purely local workplace squabble.

I turn to the allegations of Bernheim's second amended complaint, and present them in roughly ascending order of triviality:

77. Defendant Jeffrey Litt retaliated against plaintiff for exercising her first amendment rights in the following manner: [He] illegally conferred plaintiff's position of library teacher upon another teacher.

78. Thereafter, ... Litt demoted plaintiff to the position of classroom teacher, although she had held an out of class position for five years....

....

80. Defendant Jeffrey Litt was aware that plaintiff suffered from certain disabilities.... In order to retaliate ... Litt assigned her to a classroom on the fifth floor of the building.

81. Litt assigned plaintiff to lunch duty....

82. [D]efendant caused an assistant principal to direct plaintiff to remove her school belongings from the room that she had been using as an office....

83. Litt caused the lock on plaintiff's supply closets to be cut on the first day of school, and her property removed.

84. Litt caused plaintiff's prepatory [sic] periods to be reduced from two a day to one a day....

....

86. Litt caused Assistant Principal Rafael Gonzalez to harass plaintiff by sending her letters unjustly criticizing her performance as a teacher.

87. [Litt] required plaintiff to escort the class to the lunchroom from the fifth floor to the ground floor....

88. Litt told a parent that plaintiff's assertion that there were not enough science books was untruthful....

89. [D]efendant failed to return necessary "no fault" forms that had been sent to the school by the plaintiff's insurance company.

....

93. [Litt] stood near the plaintiff when she reviewed her file and when she asked that a document be marked for copying he slapped a marker on it in a physically aggressive manner, slamming it down on the paper.

94. As a result of the aforesaid discriminatory practices and retaliatory practices by defendant Jeffrey Litt, plaintiff has been damaged in the sum of seven hundred and fifty thousand dollars.

It is clear that Bernheim has not alleged that she was terminated in retaliation for her speech, and thus cannot plead a cause of action under *Pickering* and *Connick*. She does not allege a reduction in salary. Bernheim *does* allege that she was "demoted" by being re-assigned to sixth grade teaching from what she calls the "out of class position" of library teacher, but this conclusory allegation, in my view, is insufficient. While Bernheim evidently considers it advantageous for a schoolteacher to be disburdened of having to teach a class of children, she cites no ground of right or entitlement for her continued enjoyment of a child-free teaching career. More important, this assignment cannot be deemed a punishment or retaliation. Many teachers who teach children would view it as a detriment to *lose* the opportunity to teach by being consigned to the role of library teacher. In short, classroom or library assignment is at most a matter of preference, and for that reason cannot reasonably be deemed to be a demotion.

Bernheim's allegations that she was assigned to a fifth-floor classroom cannot support a claim under *Rutan*, both because the claim is trivial and because this too is a matter of preference. If there is no elevator, the fifth floor will be harder to get to than the first; at the same time, it might be more airy and quiet. But even if the roof leaks, this is not the stuff of constitutional litigation because (if for no other reason) no one would be driven from the marketplace of ideas because of a fear of a room assignment.

As to lunchroom duty and the accompanying of her charges to the lunchroom, it is possible (however unlikely), that these constitute new burdens that are not part of her responsibilities as a teacher, although I note that there is no allegation that she was singled out from the ranks of sixth grade teachers to bear these burdens. Similarly, Bernheim's allegation that the number of her

preparatory periods was reduced does not say that she was singled out for this scheduling adjustment. I do note that the record in the district court contains a grievance form signed by Bernheim—the authenticity of which Bernheim has not thus far disputed—in which she states that "*every* sixth grade teacher's preparatory periods was [sic] reduced from [two] ... to an elementary school program consisting of one preparation period per day." However, neither we nor the district court may consider this in the context of Rule 12(b)(6).

Bernheim's allegations concerning her supply closet and the insurance form are simply too trivial to support a retaliation claim. The removal of her "school belongings" from "the room she had been using as an office" could be read to say that she was denied an office that goes with her job; but I note that she fails to allege specifically that the room was assigned to her as an office, or that any of the materials removed belonged to anyone but the school.

Other alleged instances of retaliation—(i) a critical letter, (ii) a disagreement about the supply of science textbooks, and (iii) Principal Litt's vigorous application of Post–Its® to Bernheim's file—are also trivial, and reflect a misperception on her part that her free expression under the First Amendment requires that other people suppress the disapproval and anger that her speech provokes.

I agree with the majority that the dismissal under Rule 12(b)(6) was at least premature; but the particular instances of retaliation in this complaint illustrate why we should draw some line (as the district court undertook to do) between claims of retaliation that are actionable, and claims of retaliation that are not. I would draw that line in this case, and specify which allegations should be dismissed and which should be subject to such further proceedings as they require.